Joshua VANDERVELDEN, Plaintiff-Respondent-Cross
Appellant,†

v.

Benjamin VICTORIA, M.D., Defendant-Appellant-Cross
Respondent.

Court of Appeals

*No. 91–0982. Submitted on briefs February 3, 1993.—Decided
May 18, 1993.*

(Also reported in 502 N.W.2d 276.)

†Petition to review denied.

For the defendant-appellant-cross respondent the cause was submitted on the briefs of *La Follette & Sinykin*, by *Timothy J. Muldowney* and *Jeffrey J. Kassel*, of Madison, and *Riordan, Crivello, Carlson, Mentkowski & Steeves, S.C.*, by *Linda E.B. Hansen* and *Mary E. Nelson*, of Milwaukee.

For the plaintiff-respondent-cross appellant the cause was submitted on the briefs of *S.A. Schapiro*, of Milwaukee.

*Amicus Curiae* brief was filed by *Sally L. Wencel* and *Mark L. Adams*, of Madison, for the State Medical Society of Wisconsin.

*Amicus Curiae* brief was filed by *George W. Koch, Jr.* and *Nancy M. Gannon*, of counsel, of Wauwatosa, for the Catholic League for Religious and Civil Rights.

*Amicus Curiae* brief was filed by Volunteer Attorneys for the American Civil Liberties Union Foundation of WI by *Mary Jo Schiavoni* and *Elyse M. Mollner*, of Milwaukee, for the American Civil Liberties Union Foundation of Wisconsin.

*Amicus Curiae* brief was filed by *Thomas Patrick Monaghan* and *Walter M. Weber*, of New Hope, KY, and by *Tilg & Koch* by *Thomas M. Foy*, of Milwaukee, for Free Speech Advocates.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

WEDEMEYER, P.J. Benjamin Victoria, M.D., appeals from a judgment entered on March 29, 1991, in favor of Joshua Vandervelden (Joshua) for $1,146,516.88, following a jury trial where it was found that Dr. Victoria had committed a battery against Joshua during the time period in which Joshua was a fetus. Dr. Victoria asserts that the trial court erred by allowing the case to proceed to trial on the basis of a battery claim.

Joshua cross-appeals from that part of the judgment where it was stipulated between the parties that "the Court of Appeals shall cause the destruction of the tapes upon its completion of their use unless the matter is further appealed to the Wisconsin Supreme Court."

Joshua argues that the stipulation should be disregarded and the videotapes preserved as a public record.

Because the trial court erred in allowing the case to proceed to trial on the basis of a battery claim, we reverse the $1,146,516.88 judgment in favor of Joshua. Because the stipulation between the parties concerning the videotapes has binding effect, we affirm that part of the judgment that calls for the videotapes to be destroyed after time for appeal has expired.

## I. APPEAL

### A. Background

On January 10, 1979, the plaintiff's mother, Linda Noie, then six-to-eight weeks pregnant with plaintiff, went to the Fox Valley Reproductive Health Care Services to obtain information about an abortion. Brian Rusch, the father of the child, accompanied her. The couple met with a counselor at Fox Valley who discussed the procedure with them.

Two days later, on the morning of January 12, 1979, Ms. Noie and Mr. Rusch returned to the clinic. The couple had discussed the matter amongst themselves and had decided that an abortion was the most appropriate option. Ms. Noie read and signed the required medical consent forms. Several hours later, Dr. Victoria performed the abortion procedure.

Subsequently, Ms. Noie learned that the abortion procedure had not been successful. On September 18, 1979, Ms. Noie gave birth to Joshua. Because there was some indication of fetal distress and because the attempt to induce natural labor was unsuccessful, Joshua was delivered via caesarean section. Joshua was placed on a respirator and remained in the hospital fourteen days before being discharged.

On February 28, 1989, Joshua filed a complaint against Dr. Victoria in which he claimed battery. Joshua alleged that he had been injured by the unsuccessful abortion procedure performed upon his pregnant mother while he was a fetus of six-to-eight-weeks' gestational age. The complaint sought compensatory damages for hearing loss and alleged brain damage.[1] The complaint also sought punitive damages for Dr. Victoria's conduct.

Dr. Victoria filed an answer denying the allegations of battery. The answer also set forth several affirmative defenses, including the defenses that Ms. Noie had consented to the procedure and that Joshua had failed to comply with the mediation requirements of ch. 655, Stats. In response, Joshua filed a motion to strike Dr. Victoria's affirmative defenses. Dr. Victoria also filed a motion seeking summary judgment based on the affirmative defenses as pled.

On June 26, 1989, the trial court held a hearing on the motions. The trial court found that as a fetus, Joshua had failed to consent to the abortion procedure and that the mother's consent, therefore, could not serve as the basis for an affirmative defense: "The consent given by the mother was not the consent to batter. It was consent to abort. The child, in any event, gave neither consent to batter, nor consent to abort." The trial court also found that the case was not governed by ch. 655, Stats., because there were no allegations of negligence.

---

[1] There is no dispute that Joshua suffers from hearing loss in his left ear. There is dispute, however, as to the cause and the extent of the hearing loss. Both sides also agree that there is an asymmetry in the lateral ventricles of Joshua's brain. The parties disagree, however, as to whether that asymmetry falls within the normal range of variation or whether it is abnormal.

The case proceeded to trial on January 14, 1991. At the close of the testimony, the trial court instructed the jury as follows:

> A battery is the unlawful and intentional use of force upon the person of another, resulting in the infliction of physical harm to such other. The use of force or violence in any degree upon the person of another is unlawful when no permission for the bodily contact has been given by the person upon whom such force or violence has been committed. A fetus is a person.

The jury found Dr. Victoria guilty of committing a battery and awarded Joshua $25,000 for future medical expenses, $300,000 for loss of earning capacity and $800,000 for past and future pain, suffering and disability. Dr. Victoria's post-verdict motions were denied and he now appeals.

### B. Discussion

This case presents an issue of first impression in Wisconsin. The issue can be summarized as follows: whether a physician who performs an unsuccessful abortion procedure on a non-viable fetus can be held liable for a battery against the unborn fetus where the mother has freely and fully given her consent to the abortion procedure.

Dr. Victoria argues the only consent that a physician need obtain before performing an abortion or any other medical procedure on a pregnant woman is that of the woman herself. Accordingly, Dr. Victoria requests this court to hold that a child injured *in utero* as a result of a medical procedure performed with his or her mother's consent cannot obtain recovery based on a

battery theory, but rather, must plead and prove negligence by the physician. We agree.[2]

As defined in the Wisconsin Civil Jury Instructions, a battery is:

> the unlawful and intentional use of force and violence upon the person of another, resulting in the infliction of physical harm to such other. The use of force or violence in any degree upon the person of another is unlawful when no permission for the bodily contact has been given by the person upon whom such force or violence has been committed.

Wis J I—Civil 2005. Thus, to establish that a battery has occurred a plaintiff must establish the following three elements: (1) an unlawful use of force or violence upon another; (2) the intentional direction of such force or violence at the person of another; and (3) bodily harm sustained on the part of the person against whom such force or violence is directed. *Id.; see also Vosburg v. Putney*, 80 Wis. 523, 527–28, 50 N.W. 403, 403–04 (1891).

In the present case, Joshua has failed to satisfy the first element of a battery—that of unlawful contact by Dr. Victoria. Neither party disputes the fact that Ms. Noie gave her consent for the medical procedure performed by Dr. Victoria. Both parties also agree that the

---

[2] As an initial matter, both sides agree that an abortion performed before "viability" is not a crime under Wisconsin law. *See* sec. 940.15(2), Stats. "Viability" is defined as being "that state of fetal development when, in the medical judgment of the attending physician based on the particular facts of the case before him or her, there is a reasonable likelihood of sustained survival of the fetus outside the womb, with or without artificial support." Section 940.15(1), Stats.

abortion procedure in the present case, although unsuccessful, was a legal procedure. Further, Dr. Victoria, at the time of the procedure, was a fully licensed physician in Wisconsin. Because Ms. Noie consented freely and without coercion to the procedure, and because Dr. Victoria did not exceed the scope of that consent, as a matter of law there can be no finding that Dr. Victoria unlawfully contacted the fetus. Thus, the intentional tort of battery is not an appropriate basis upon which to consider the actions of Dr. Victoria.[3]

As noted earlier, the trial court found that the consent of Ms. Noie was irrelevant to the consent of the fetus. Thus, the trial court implicitly concluded that a fetus must independently give its consent to a medical procedure to which the mother has already consented.[4]

---

[3] Presently, in Wisconsin, for an abortion procedure to comply with the law, the legislature has recognized that a physician need only obtain the consent of the pregnant woman. Section 146.78(3), Stats. Although not in existence at the time of the abortion procedure in the present case, this statute nonetheless supports our holding that only a mother need consent to an abortion procedure.

[4] As noted by Dr. Victoria, New York and Illinois courts have recently concluded that a pregnant woman has the right to consent to a medical procedure on behalf of herself and her fetus. In *Hughson v. St. Francis Hospital*, 459 N.Y.S.2d 814 (N.Y. App. Div. 1983), a malpractice action against a physician for prenatal injuries based on a failure to obtain the informed consent of the mother, the court stated:

> A child is not legally competent to give binding consent to any medical services rendered to his or herself. It is the parent who gives effective consent, notwithstanding that it is the child who is the "patient". Perforce, a fetus or infant in utero is also unable to give legal consent, much less, as a practical matter, any consent at all. It is the pregnant mother to whom we must look.

*Id.* at 817 (citation omitted).

Absent such independent fetal consent, by the trial court's theory, if the fetus survived to birth and was subsequently found to be injured, he or she would be entitled to compensation for the injuries. Even ignoring the logistical problems that such a "fetal consent requirement" creates, this proposition has no basis in the law.[5]

In reaching its conclusion that a fetus was entitled to maintain a battery action for an unsuccessful abortion procedure, the trial court relied on two principle sources: Art. I, sec. 9, of the Wisconsin Constitution and *Puhl v. Milwaukee Automobile Ins. Co.*, 8 Wis. 2d 343, 99 N.W.2d 163 (1959). We find neither source persuasive in the present context.

First, the trial court found that the fetus, a person, was constitutionally entitled to redress for the wrong committed by Dr. Victoria. Article I, sec. 9—the "rem-

---

In *Roberts v. Patel*, 620 F. Supp. 323 (N.D. Ill. 1985), also a malpractice action for prenatal injuries, the court held that a fetus' mother has the right to consent to treatment on behalf of the fetus. "This court is at a loss to say who may consent to the treatment of an unborn fetus if not the unborn fetus' parent." *Id.* at 324.

[5] If we were to uphold the decision of the trial court, we would essentially be creating a "fetal consent requirement." The question then arises as to who could give consent on behalf of the fetus. The appointment of a guardian ad litem is a possibility. However, the problems associated with a guardian appointment are readily apparent. Who would select the guardian? Who would review the selection process? What rights would the guardian be asserting? Would personal beliefs on the abortion issue be considered in the selection process? Clearly, a fetal consent requirement could create extremely cumbersome situations. Further, such a requirement would infringe upon a woman's constitutional right to obtain an abortion.

251

edy for wrongs" provision of the Wisconsin Constitution—states:

> Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws.

As an initial matter, we note the fact that the trial court referred to the nonviable fetus in this case as a "person." We know of no court that has found a fetus of less than three months' gestational age to be considered as a person entitled to legal protection. This finding runs counter to the United States Supreme Court's ruling in *Roe v. Wade*, 410 U.S. 113, 158 (1973) ("All this . . . persuades us that the word 'person', as used in the Fourteenth Amendment, does not include the unborn"). Furthermore, sec. 9 does not—the trial court's implication to the contrary notwithstanding—*create* any legal rights, but rather, guarantees access to the courts to enforce *existing* rights. *See Mulder v. Acme-Cleveland Corp.*, 95 Wis. 2d 173, 189–90, 290 N.W.2d 276, 284 (1980). To allow a battery action in the present case would be to create a right not in existence in Wisconsin law.

*Puhl* presented the issue of whether a plaintiff could assert a *negligence* claim for injuries suffered in an automobile accident while she was a nonviable fetus. *See Puhl*, 8 Wis. 2d at 351, 348, 99 N.W.2d at 168, 166. The Wisconsin Supreme Court held that the plaintiff had failed to prove causation and affirmed the trial court's dismissal of her case. *Id.* at 354, 99 N.W.2d at 169. The *Puhl* court never considered the question of a

fetus' lack of consent to a medical procedure. Thus, its application in the present case is of no help in our decision-making process.

In conclusion, where a woman has freely consented to an abortion procedure on a non-viable fetus, a physician may not be held liable for a battery to the unborn fetus. Negligence law, not battery law, provides the appropriate basis for determining physician liability where the plaintiff alleges that the physician improperly performed a medical procedure.

## II. CROSS-APPEAL

### A. Background

On March 5, 1990, Joshua moved the trial court to allow videotaping of the trial. The trial court granted the motion. On the second day of trial, however, the trial court prohibited further taping when it was discovered that the taping was being conducted by an anti-abortion group, Wisconsin Right to Life. The trial court stated:

> I ordered such permission over the objection of the defense. It was my understanding at that time that the tape would be used for the purpose of the Appeals Court's review, and now it has been brought to my attention that this tape is to be done pursuant to a contract between the taping company, TV 3, WVCR, and Wisconsin Right to Life, and it's my opinion that, and I'm informed that, Wisconsin Right to Life is an anti-abortion organization.
>
> It's my suspicion that Wisconsin Right to Life would make some use of this tape after the appellate process, but the use I suspect would be to further or advance a point of view, that point of view being in the nature of a hostility to abortions. This

253

Court does not want to participate or be a factor in such a propaganda. I am not commenting on my position on the issue of abortion. That position is not relevant. What is relevant is whether or not this Court becomes a participant in the furtherance of a point of view, either pro or hostile, to abortion, and I am not willing to permit this Court to be so used.

Joshua objected to the ruling, arguing that it prejudiced his ability to ask this court to review the credibility of the witnesses. Joshua further argued that the trial court had the ability to control the tape and thus prevent any misuse. The trial court agreed, pursuant to the following stipulation:

THE COURT: First, there shall be one original tape.

Secondly, daily that original tape shall be left with this Court at the end of the workday.

Thirdly, at the close of this trial, the tapes produced shall be left in the custody of this Court and [are] to be turned over to the Court of Appeals if there is an appeal by the plaintiff, otherwise destroyed.

Fourthly, there shall be no attempt by any party to obtain the production of this tape or these tapes pursuant to the open records law or any other law now in existence or that will come into existence in the future; and,

Fifthly, the parties agree to resist any attempt by any third party to obtain the production of these tapes by any means, including the open records law. By resistance, I mean their position shall be that they do not agree with any production; they will not stipulate to any production.

Did you hear and understand that, Mr. Schapiro?

MR. SCHAPIRO: Judge, on behalf of Joshua Vandervelden, I will agree to those conditions.

> THE COURT: All right, and Ms. Hansen?
> MS. HANSEN: I understand, Your Honor.

After the plaintiff prevailed at trial, Dr. Victoria moved the trial court for an order that the tapes be destroyed. In responding to the motion the following discussion occurred:

> THE COURT: The only way that this video-tape is not destroyed is that Mr. Schapiro appeals.
> MS. HANSEN: Right, if he does not appeal then the video is destroyed.
> MR. SCHAPIRO: I have no objection to the destruction of the video after the time for appeal.

During the pendency of this appeal, Joshua has filed two requests with this court to obtain the video-tape in question. Both requests were denied. He now requests that we rule that the videotape is a public record and should be accessible to any and all parties.[6]

## B. Discussion

Section 807.05, Stats., governs the appropriate procedures to be followed regarding stipulations and reads as follows:

> No agreement, stipulation, or consent between parties or their attorneys, in respect to the proceedings in an action or special proceeding shall be binding unless made in court . . . and entered in the minutes or recorded by the reporter, or made in writing and subscribed by the party to be bound thereby or the party's attorney.

---

[6] It should be noted that only Joshua objects to the destruction of the videotape.

As noted by this court, "[t]he only way to give sec. 807.05 meaning is to enforce its terms." *Marks v. Gohlke*, 149 Wis. 2d 750, 753, 439 N.W.2d 157, 158 (Ct. App. 1989).

In the present case, Joshua, through his attorney, agreed to the destruction of the videotape following trial or upon resolution of any appeals. As noted from the above quoted trial court passage, Joshua expressly agreed that he would not attempt to obtain production of the videotape "pursuant to the open records law or any other law now in existence or that will come into existence." Allowing Joshua to renege on his promise would be to thwart the legislature's directive that stipulations between parties are binding. Here, the stipulation was clear, made in open court, and accepted by all the parties. Section 807.05, Stats., has been fully complied with and, therefore, the effect of the stipulation is binding. After the time for appeal has expired, the videotape, pursuant to stipulation, will be destroyed.[7]

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.

---

[7] Dr. Victoria also argues that Joshua's cause of action is frivolous under sec. 814.025(3), Stats. Joshua counterclaims that Dr. Victoria's defense based on frivolousness is itself a frivolous claim. We conclude that neither party has presented a frivolous claim. Therefore, all requests for sanctions based on frivolousness are hereby denied.