Thomas N. TOMCZAK and Mary Ann Tomczak by John Louis Castellani, Trustee of the bankrupt estate, Plaintiff-Respondent,

v.

Pete L. BAILEY and American Surveying Company, Inc., Defendants-Appellants-Petitioners,

Randolph L. RAFALSKI and Interline Surveying Services, Inc., Defendants,

Mildred B. WOHLFARD, Defendant-Third Party Plaintiff,

v.

EQUITABLE/STEFANIAK REALTY, Third Party Defendant.

Supreme Court

*No. 95–2733. Oral argument October 7, 1997.—Decided May 22, 1998.*

(Also reported in 578 N.W.2d 166.)

245

For the defendants-appellants-petitioners there were briefs by *Stephen L. Fox* and *Schmidt & Rupke, S.C.*, Milwaukee and oral argument by *Stephen L. Fox.*

For the plaintiff-respondent there was a brief by *Robert H. Bichler, Brenda J. Stugelmeyer* and *Hostak, Henzl & Bichler, S.C.*, Racine and oral argument by *Robert H. Bichler.*

Amicus curiae was filed by *John A. Kassner* and *Wendel & Center*, Madison for the Wisconsin Builders Assocation.

¶ 1. JON P. WILCOX, J.   This is a review of a published decision of the court of appeals, *Tomczak v. Bailey*, 206 Wis. 2d 405, 557 N.W.2d 840 (Ct. App. 1996), which affirmed an order of the Circuit Court for Racine County, Dennis J. Flynn, Judge. The circuit court denied the summary judgment motion of the defendants, Pete L. Bailey (Bailey) and American Surveying Company (American), seeking dismissal because the plaintiffs, Thomas N. Tomczak and Mary Ann Tomczak (the Tomczaks), brought their action after the six-year limitation period set forth in Wis. Stat. § 893.37 (1993–94)[1] had expired. The circuit court held that the "discovery rule," as adopted by this court in *Hansen v. A.H. Robins, Inc.*, 113 Wis. 2d 550, 560,

---

[1] Unless otherwise noted, all future references to Wis. Stats. are to the 1993–94 version of the statutes.

Wisconsin Stat. § 893.37 provides:

> **893.37 Survey.** No action may be brought against an engineer or any land surveyor to recover damages for negligence, errors or omission in the making of any survey nor for contribution or indemnity related to such negligence, errors or omissions more than 6 years after the completion of a survey.

335 N.W.2d 578 (1983), applied to the Tomczaks' cause of action so as to render it timely.

¶ 2. There are three issues before us on review: (1) whether the *Hansen* discovery rule applies to the time limitation for commencement of an action against a land surveyor under Wis. Stat. § 893.37; (2) whether § 893.37 violates the equal protection clauses of the United States and Wisconsin constitutions; and (3) whether placement of surveyor's stakes in the ground constitutes a continuing tort, such that the six-year limitation period may be tolled following completion of a survey.[2] We hold that the *Hansen* discovery rule does not apply to the time limitation for commencement of an action under § 893.37, that § 893.37 satisfies the

---

[2] The circuit court rejected the Tomczaks' continuing tort allegations, but did not rule upon the equal protection challenge to the surveyor statute pending compliance with the uniform declaratory judgments act, Wis. Stat. § 806.04(11). This statute requires that the attorney general be notified and presented with the opportunity to appear on behalf of the state if a statute is alleged to be unconstitutional. The court of appeals directed the Tomczaks to comply with § 806.04(11), but reached neither the constitutional challenge to the surveyor statute, nor the continuing tort argument in its decision. Because we reverse the decision of the court of appeals, our consideration of these issues is appropriate.

Although the attorney general declined to appear, we note that the Tomczaks did notify the attorney general of both the court of appeals proceedings, as well as the proceedings before this court. Therefore, any jurisdictional defect caused by the Tomczaks' failure to comply with the notification requirement during the circuit court proceedings, *see Kurtz v. City of Waukesha*, 91 Wis. 2d 103, 116–17, 280 N.W.2d 757 (1979), "was cured by virtue of the subsequent invitation to the attorney general to participate in the court of appeals' proceedings." *In re Estate of Fessler*, 100 Wis. 2d 437, 444, 302 N.W.2d 414 (1981).

equal protection commands of the state and federal constitutions, and that the limitation period was not tolled following completion of the survey. Accordingly, we reverse the decision of the court of appeals.

¶ 3.    The relevant facts are not in dispute. On August 25, 1988, Bailey, a land surveyor employed by American, surveyed and staked the boundaries of lots 96 and 97, located in the unrecorded plat of the Elm Island subdivision in Waterford, Wisconsin. The surveyor's certificate indicated that the survey was "made for the present owners of the property, and also those who purchase. . .within one (1) year" from the date of the survey.

¶ 4.    Around that time, the Tomczaks negotiated with the defendant Mildred B. Wohlfard and her real estate agent for the purchase of the two lots. During these negotiations, the Tomczaks became aware of the survey markers placed on the property by Bailey, and were provided with a copy of Bailey's survey. On October 21, 1988, the Tomczaks purchased the lots.

¶ 5.    In 1989, the Tomczaks began making improvements to the property. In doing so, their builder hired a different survey company, Inman Survey and Associates, Inc. (now defendant Interline Surveying Services, Inc.), to confirm the boundaries of the property. This surveyor relied on the stakes placed by Bailey in confirming that the boundaries of lots 96 and 97 existed as marked. The builder then completed construction of a home and deck on the property consistent with the Bailey and Inman/Interline surveys.

¶ 6.    In June 1994, Charles and Kim Andersen (the Andersens) purchased the land adjacent to the Tomczaks' property. In conjunction with this purchase, the Andersens had their property surveyed to confirm its boundaries. Their survey indicated that the

Tomczaks' house, deck, patio and pier extended onto the Andersens' property. According to this new survey, the boundaries of lots 96 and 97 as marked by Bailey were actually the boundaries of lots 97 and 98 of the unrecorded plat of Elm Island.

¶ 7. As a result, the Andersens commenced an action for trespass and encroachment against the Tomczaks. On May 24, 1995, the Tomczaks in turn instituted this negligence action against Bailey and American seeking attorney's fees and other damages incurred in defending the Andersens' lawsuit. Bailey and American moved for summary judgment arguing that the Tomczaks' claim was time barred under Wis. Stat. § 893.37. The Tomczaks opposed the motion by invoking the discovery rule of *Hansen*. That is, the Tomczaks asserted that the six-year limitation period did not begin to run at least until they became aware of their encroachment on the Andersens' property in June 1994.

¶ 8. The circuit court denied Bailey and American's motion for summary judgment, holding that the discovery rule applied to the time limitation set forth in Wis. Stat. § 893.37. The court of appeals agreed, stating: "Because the language of § 893.37, Stats., contains no rule of discovery, we conclude that it falls under the *Hansen* discovery rule." *Tomczak*, 206 Wis. 2d at 416. The court of appeals therefore affirmed the circuit court's non-final order denying Bailey and American's motion for summary judgment, and remanded the cause for further proceedings. Bailey and American appeal from the decision of the court of appeals.

## I.

¶ 9. We first consider whether the *Hansen* discovery rule applies to the limitation period governing lawsuits against surveyors. The application of a statute to a particular set of facts is a question of law which this court reviews without deference to the conclusions of the circuit court or the court of appeals. *See State v. Ahrling*, 191 Wis. 2d 398, 403, 528 N.W.2d 431 (1995). Therefore, we review the court of appeals' decision de novo.

¶ 10. Wisconsin Stat. § 893.37 is a statute of repose. It provides that a cause of action must be commenced within a specified amount of time after the defendant's action which allegedly led to injury, regardless of whether the plaintiff has discovered the injury or wrongdoing. In this case, the statute bars suit against a surveyor brought more than six years after the survey was completed.

¶ 11. Wisconsin Stat. § 893.37 is not a statute of limitations, which bars an action not commenced within a specified amount of time after the cause of action "accrues." Nevertheless, the Tomczaks ask this court to apply the *Hansen* discovery rule to § 893.37, so that its six-year limitation period began to run, at the earliest, in June 1994 when the Tomczaks became aware of their encroachment on the Andersens' property. Not only does such reasoning run contrary to the plain language of § 893.37, but it also misreads our decision in *Hansen*.[3]

---

[3] For recent discussions of the *Hansen* discovery rule and its application, *see Claypool v. Levin*, 209 Wis. 2d 284, 294–97, 562 N.W.2d 584 (1997); *Pritzlaff v. Archdiocese of Milwaukee*, 194 Wis. 2d 302, 312–16, 533 N.W.2d 780 (1995).

¶ 12.   In *Hansen*, we were faced with a certified question of law from the United States Court of Appeals for the Seventh Circuit. The following question was certified for our determination: "When does the cause of action *accrue* within the meaning of the Wisconsin *statute of limitations* for personal injury actions. . .when the injury to the plaintiff was caused by a disease which may have been contracted as a result of protracted exposure to a foreign substance?" 113 Wis. 2d at 551–52 (emphasis added). The case involved a woman (Hansen) who was allegedly injured by use of a Dalkon Shield intrauterine device. Hansen first discovered abnormal medical symptoms approximately four years after the device had been inserted into her uterus by medical personnel, and later discovered that she had pelvic inflammatory disease. The disease left her fallopian tubes blocked, rendering her sterile. *See id.* at 552–53.

¶ 13.   The applicable statute of limitations for Hansen's lawsuit provided that an action to recover damages for injuries sustained must be brought within three years "after the cause of action has accrued." *Id.* at 554. *See* Wis. Stat. §§ 893.14, 893.205(1) (1977). Thus, we were left to decide when the cause of action accrued for the purposes of Hansen's action because the legislature had not spoken on the issue. *See Hansen*, 113 Wis. 2d at 556–57, 559–60. Acknowledging the "harsh results" that often stem from using the date of injury as the benchmark for accrual of claims, we stated:

> In the interest of justice and fundamental fairness, we adopt the discovery rule for all tort actions other than those already governed by a legislatively created discovery rule. Such tort claims shall accrue on

the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first. All cases holding that tort claims accrue at the time of the negligent act or injury are hereby overruled.

*Id.* at 556, 560.

¶ 14. Of principal importance to our decision in *Hansen* was the legislature's silence on the issue of when such a cause of action would accrue. In the present situation, the legislature has explicitly barred suits against surveyors that are not brought within six years from the date that the survey was completed. In effect, the legislature has already determined when the claim "accrues": the date the survey is completed, not the date that the injury is discovered.

¶ 15. We are unwilling to change the legislature's decision on time limitation periods such as that provided by the surveyor's statute. "[W]isconsin courts have traditionally held that statutes of limitation are policy considerations within the province of the legislature." *Miller v. Kretz*, 191 Wis. 2d 573, 580, 531 N.W.2d 93 (Ct. App. 1995) (citation omitted). In short, the decision to close the courthouse doors on litigants with stale claims is a pure question of policy that is better left to the legislative branch of government.

¶ 16. The Tomczaks argue, however, that the legislature has not "grappled" with the inequities inherent with a limitation period that commences before the injury is discovered. According to the Tomczaks, justice dictates that a time limitation period not begin to run on tort claims without discovery, unless the legislature has clearly illustrated, either through legislative history or by the language of the statute itself, that it has weighed the unfairness that

such a result would produce against other policy considerations.

¶ 17.  Consistent with this argument is the Tomczaks' contention that the discovery rule was not recognized at the time that Wis. Stat. § 893.37 was amended in 1979 to its current form. Because it was not a recognized principle in this state prior to our decision in *Hansen*, the Tomczaks argue that we can presume that the discovery rule was not considered by the legislature. We address these arguments in turn.

¶ 18.  We conclude that in adopting Wis. Stat. § 893.37, the legislature did consider the inequity of a time limitation period that commences prior to discovery, and yet determined that claims against surveyors will be barred six years after the survey has been completed, regardless of when the injury is discovered. Although the plain language of § 893.37 is sufficient to support our conclusion, we note that the legislative history to which the Tomczaks refer serves to affirm our conclusion.

¶ 19.  Wisconsin Stat. § 893.37 was originally enacted as Wis. Stat. § 59.665 (1969), by 1969 Assembly Bill 533. *See* Chapter 499, Laws of 1969, § 15. The only relevant difference between the current surveyor's statute and its predecessor was the earlier version's four-year limitation period for commencing an action, instead of the current six-year period. Ten years after the statute was first enacted, 1979 Assembly Bill 326 renumbered § 59.665 (1969) to § 893.36 and amended it to read as it currently stands. *See* Chapter 323, Laws of 1979, § 3.[4] The Judicial Council Committee's Note that is attached to the amended version of the statute

---

[4] That same year, it was then renumbered to its current location at Wis. Stat. § 893.37 by 1979 Senate Bill 621. *See* Chapter 355, Laws of 1979, § 228.

explains that "[t]he 4-year statute of limitation time period. . .has been increased to 6 years as it is felt the prior time period was too short as the consequences of an erroneous survey are sometimes not readily apparent." Wis. Stat. § 893.37 (1979–80).

¶ 20.   Had we not been satisfied that the plain language of Wis. Stat. § 893.37 illustrates the legislature's intent to bar claims against surveyors regardless of when the injury is discovered, the Committee Note clearly reveals the legislature's consideration, and rejection, of discovery principles. In this case, the legislature recognized the problems inherent in a four-year statute of repose relating to surveyor negligence, and, to remedy the situation, chose to grant injured parties another two years to commence litigation.

¶ 21.   This alone would seem to be enough to reject the Tomczaks' argument that the discovery rule was a principle unrecognized in the law prior to our decision in *Hansen*. However, we also point out that at least five sections of Wis. Stat. ch. 893 (1979–80) included discovery provisions prior to our decision in *Hansen*,[5] proving that the legislature was aware of discovery principles when it adopted Wis. Stat. § 893.37.

¶ 22.   The Tomczaks contend, and the court of appeals held, that the discovery rule should apply because Wis. Stat. § 893.37 does not contain a legislatively created discovery rule or "recite discovery principles or contain discovery language," as required in order to be exempt from our holding in *Hansen*. *See Tomczak*, 206 Wis. 2d at 415. We disagree.

---

[5] *See* Wis. Stat. §§ 893.55 (medical malpractice), 893.60 (forfeiture actions), 893.87 (fraud actions involving the state), 893.89 (injury resulting from improvements to real property), 893.93 (fraud actions) (1979–80).

¶ 23. Although we adopted the discovery rule for all tort actions other than those "already governed by a legislatively created discovery rule," *Hansen*, 113 Wis. 2d at 560, we did not require that all statutory time periods for initiating an action be based upon the injured party's discovery of his or her injury. Indeed, our statement that "[a]ll *cases* holding that tort claims accrue at the time of the negligent act or injury are hereby overruled," *id.* (emphasis added), makes clear that we overruled all *judicial* determinations that a cause of action accrues at the time of the negligent act or injury, not all legislative declarations that set the time of injury as the accrual date. The latter suggestion would require this court to rewrite Wis. Stat. § 893.37 and other statutes of repose like it—a course of action that is neither appropriate nor constitutionally sound.

¶ 24. Moreover, by referencing previously existing "legislatively created discovery rules" in *Hansen*, we merely recognized the legislature's adoption of a limited discovery rule for medical malpractice actions. *See Hansen*, 113 Wis. 2d at 556–57; Wis. Stat. § 893.55 (1979–80).[6] Although § 893.55 is a statute of

---

[6] Wis. Stat. § 893.55 (1979–80) provided in part:

**893.55 Limitation of actions; medical malpractice.**

(1) Except as provided by subs. (2) and (3), an action to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a person who is a health care provider, regardless of the theory on which the action is based, shall be commenced within the later of:

    (a) Three years from the date of the injury, or

    (b) One year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered, except that an action may not be commenced under this paragraph more than 5 years from the date of the act or omission. . . .

The statute contains virtually the same language today. *See* Wis. Stat. § 893.55 (1995–96).

repose, it also employs a restricted, one-year discovery rule in limiting actions against health care providers.

¶ 25. Thus, as we have said, *Hansen*'s "exemption" of tort actions already governed by a legislatively created discovery rule was not intended to necessitate a discovery rule for every tort action. It is more appropriately interpreted as our recognition of the legislature's power to attach very limited discovery rules to statutes of repose. Where the legislature has done so, we indicated that this court will not override that decision in order to apply its own discovery rule. Our decision today clarifies that the legislature may not only adopt limited discovery rules such as that set forth in Wis. Stat. § 893.55, but may also choose to employ no discovery rule at all.

¶ 26. In concluding that the *Hansen* discovery rule applies to the Tomczaks' cause of action under Wis. Stat. § 893.37, the court of appeals decided that *H.A. Freitag & Son, Inc. v. Bush*, 152 Wis. 2d 33, 447 N.W.2d 71 (Ct. App. 1989), and not *Skrupky v. Elbert*, 189 Wis. 2d 31, 526 N.W.2d 264 (Ct. App. 1994), or *Esser Distrib. Co. v. Steidl*, 145 Wis. 2d 160, 426 N.W.2d 62 (Ct. App. 1988), *aff'd*, 149 Wis. 2d 64, 437 N.W.2d 884 (1989), "represents the correct law because it correctly interprets *Hansen*." *Tomczak*, 206 Wis. 2d at 415. We disagree with the court of appeals' conclusion of law. To explain why, we examine more closely these prior decisions by the courts of appeals.

¶ 27. The court of appeals acknowledged that *Freitag*, *Esser* and *Skrupky* all involved statutes of repose by which the limitation periods began to run as of the date of the defendant's conduct. *See Tomczak*, 206 Wis. 2d at 410–13; *see also Skrupky*, 189 Wis. 2d at 54; *Freitag*, 152 Wis. 2d at 36; *Esser*, 145 Wis. 2d at 164. Of the three decisions, however, only *Freitag* applied

the *Hansen* discovery rule to a statute of repose. *See Tomczak*, 206 Wis. 2d at 411; *Freitag*, 152 Wis. 2d at 37. Therefore, a brief look at *Freitag* is warranted to determine whether the *Hansen* discovery rule can appropriately be applied to a statute of repose.

¶ 28. In *Freitag*, the applicable limitations period as set forth in Wis. Stat. § 893.51(1) (1987–88) provided that:

> [A]n action to recover damages for the wrongful taking, conversion or detention of personal property shall be commenced within 6 years after the cause of action accrues or be barred. *The cause of action accrues at the time the wrongful taking or conversion occurs, or the wrongful detention begins.*

(Emphasis added.)[7]

¶ 29. Despite the plain language of Wis. Stat. § 893.51 that defines when the cause of action shall accrue, the court of appeals held that the *Hansen* discovery rule would apply. *See Freitag*, 152 Wis. 2d at 37. In doing so, the *Freitag* court interpreted *Hansen* to require use of the discovery rule in "all causes of action, except causes of action that have a statute of limitations that contains its own rule of discovery." *Id.* Therefore, the court of appeals stated:

> Because the statute of limitations for conversion or theft contains no rule of discovery, but by its plain language would act to bar a claim before the party owning the claim was aware of its existence, we find the judicially created discovery rule found in *Hansen* applicable to this case.

---

[7] This statute contains identical language today. *See* Wis. Stat. § 893.51(1) (1995–96).

*Id.* [8]

¶ 30.   Once again, our decision in *Hansen* did not require that all time limitation periods be based upon the discovery rule. Such reasoning is tantamount to declaring that all legislative decisions regarding time limitation periods are void unless the legislature agrees with this court's assessment of what constitutes good public policy. This we decline to do. We hold that the judicially-created *Hansen* discovery rule cannot be applied to a statute of repose.

¶ 31.   Because the *Freitag* court misunderstood our decision in *Hansen*, and incorrectly applied the discovery rule to Wis. Stat. § 893.51, that decision is hereby overruled.

## II.

¶ 32.   We next consider whether Wis. Stat. § 893.37 violates the equal protection clauses of the United States or Wisconsin constitutions. The constitutionality of a statute presents a question of law which this court considers utilizing a de novo standard of review. *See State v. Akins*, 198 Wis. 2d 495, 502, 544

---

[8] The court of appeals reached this conclusion despite the Judicial Council Committee's Note that is attached to Wis. Stat. § 893.51 (1987–88):

> **Judicial Council Committee's Note, 1979:** This section is based on previous s. 893.19(6), without change in substance, but with some expansion of language to make clear that accrual of the cause of action is not delayed until the person bringing the action learns of the wrongful taking or detention. . . .

Although the plain language of § 893.51 is sufficient to determine the intent of the legislature, this note indicates clearly that the legislature rejected discovery principles in amending the conversion statute.

N.W.2d 392 (1996). We conclude that § 893.37 satisfies the demands of both the state and federal equal protection clauses because a rational basis exists to treat land surveyors differently than other potentially liable parties such as the property owners. Accordingly, we hold that § 893.37 is constitutionally valid and applies in the present case to bar the Tomczaks' cause of action against Bailey and American.

## A.

¶ 33.   To attack a statute on grounds that it denies equal protection of the law, a party must show that the statute unconstitutionally treats members of similarly situated classes differently. *See State v. Post*, 197 Wis. 2d 279, 318, 541 N.W.2d 115 (1995). Upon review of such challenges, there is a strong presumption of constitutionality for legislative enactments, and every presumption favoring validity of the law must be indulged. *See id.* at 301 (citation omitted). Moreover, a party challenging a statute has the burden of proving the law unconstitutional beyond a reasonable doubt. *See id.* (citation omitted).

¶ 34.   Before proceeding to the constitutional analysis, we must first clarify the level of judicial scrutiny that the surveyor statute deserves. This court applies the same interpretation to the state Equal Protection Clause as that given to the equivalent federal provision. *See Post*, 197 Wis. 2d at 317 n.21 (citation omitted). *Compare* Wis. Const. art I, § 1 *with* U.S. Const. amend. XIV, § 1.

¶ 35.   "Equal protection requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage

of a suspect class." *State v. Annala*, 168 Wis. 2d 453, 468, 484 N.W.2d 138 (1992) (citation omitted). Otherwise, the appropriate analysis is to determine "whether the legislative classification rationally furthers a purpose identified by the legislature." *Id.*

¶ 36.  The Tomczaks argue that the surveyor statute is subject to the "strict scrutiny test" because it implicates a fundamental right of access to the courts. Bailey and American, on the other hand, contend that the "rational basis test" applies because the case involves economic decisions and claims, and does not involve a fundamental right or a "suspect" classification. We conclude that the rational basis test applies to Wis. Stat. § 893.37.

¶ 37.  The Tomczaks' argument regarding access to the courts is based entirely upon Wis. Const. art. I, § 9.[9] *See* Resp. Brief at 36–38. This section of the constitution "does not. . .*create* any legal rights, but rather, guarantees access to the courts to enforce *existing* rights." *Vandervelden v. Victoria*, 177 Wis. 2d 243, 252, 502 N.W.2d 276 (Ct. App. 1993) (emphasis in original). Moreover, we have explicitly held that the rights guaranteed by art. I, § 9 are not "fundamental," as that term is used in the context of equal protection analyses. *See Doering v. WEA Ins. Group*, 193 Wis. 2d 118, 130–31, 532 N.W.2d 432 (1995). Therefore, we are not persuaded that this case implicates a fundamental right, and we proceed to analyze the surveyor statute under the rational basis test.

---

[9] Article I, § 9 of the Wisconsin Constitution provides in relevant part:

> Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character. . . .

## B.

¶ 38. We pause first to note that the Tomczaks raise Wis. Const. art. I, § 9 more than once in their brief. *See* Resp. Brief at 12, 21, 29. In addition, counsel for the Tomczaks referred to art. I, § 9 several times during oral argument in this case. Although we reiterate that constitutional points merely raised but not argued will not be reviewed, *see In re Paternity of James A.O.*, 182 Wis. 2d 166, 173 n.2, 513 N.W.2d 410 (Ct. App. 1994) (citation omitted), we will assume for the sake of argument that the Tomczaks intended to formally assert that the surveyor's statute violates art. I, § 9 because it may bar a litigant's right to sue before it arises.

¶ 39. Despite our interpretation of the Tomczaks' arguments, we do not find a violation of art. I, § 9 in this case. The Tomczaks concede that they became aware of their encroachment on the Andersens' property in June 1994:

> 6) From the time we purchased the property *and at least until the time that the Andersens first raised a question about a boundary discrepancy in June 1994*, we believed our home was centered on the lots we purchased and [sic] as depicted in the Inman survey and the American survey and we were unaware that there was any discrepancy or question regarding the boundary line.

Record on Appeal, 17:2 (Aff. of Thomas N. Tomczak, July 24, 1995) (emphasis added). In addition, counsel for the Tomczaks reiterated at oral argument that it is "undisputed fact" that the Tomczaks learned of their encroachment on the Andersens' property in June 1994. Therefore, we need not be concerned with a possible violation of art. I, § 9 in this case because we

conclude that the Tomczaks' right to sue arose well before the six-year limitation period expired on August 25, 1994.[10]

## C.

¶ 40. Great deference is afforded to legislative classifications under the rational basis test. *See Annala,* 168 Wis. 2d at 468. Where, as here, a suspect classification is not alleged, and fundamental constitutional rights are not at stake, the statute " 'must be sustained unless it is 'patently arbitrary' and bears no rational relationship to a legitimate government interest.' " *State v. McManus,* 152 Wis. 2d 113, 131, 447 N.W.2d 654 (1989) (quoting *Frontiero v. Richardson,* 411 U.S. 677, 683 (1973)). Under these situations, "it is the court's obligation to locate or to construct, if possible, a rationale that might have influenced the legislature and that reasonably upholds the legislative determination." *Sambs v. City of Brookfield,* 97 Wis. 2d 356, 371, 293 N.W.2d 504 (1980).

¶ 41. As we noted in *Sambs,* "[t]he rationale which the court locates or constructs is not likely to be

---

[10] The dissent discerns a possible contradiction between this opinion and the multiple opinions in *Estate of Makos v. Wisconsin Masons Health Care Fund,* 211 Wis. 2d 41, 564 N.W.2d 662 (1997) (Geske, J., not participating), because two justices concluded that the statute of repose in that case violated Wis. Const. art. I, § 9. *See* Dissent at 286. We disagree.

In *Makos,* the plaintiff's cause of action for medical malpractice was barred before she discovered her injury. *See Makos,* 211 Wis. 2d at 45. As we have stated, we need not be concerned with a potential violation of art. I, § 9 in this case because the Tomczaks learned of their "injury" well before the period of repose had expired. Therefore, *Makos* is inapposite.

indisputable. But it is not our task to determine the wisdom of the rationale or the legislation." *Id.* In particular, limitation periods are a subject over which we have traditionally afforded the legislature significant control. *See Ortman v. Jensen & Johnson, Inc.,* 66 Wis. 2d 508, 522, 225 N.W.2d 635 (1975). Classifications made within such statutes will not be overturned if there are "some conceivable facts" which might be thought to justify the disparity in treatment. *Id.* Therefore, the issue is whether a rational basis exists for treating surveyors differently from the owners of the property in question.

¶ 42. The Tomczaks assert that there is no rational basis for the disparity in treatment afforded by Wis. Stat. § 893.37. They contend that the surveyor's statute is analogous to the statutes that were held to violate the equal protection clauses of the United States and Wisconsin constitutions in *Funk v. Wollin Silo & Equipment, Inc.,* 148 Wis. 2d 59, 435 N.W.2d 244 (1989), and *Kallas Millwork Corp. v. Square D Co.,* 66 Wis. 2d 382, 225 N.W.2d 454 (1975). Accordingly, we will address these cases in some detail.

¶ 43. *Kallas* and *Funk* are related insofar as they addressed different versions of the same statute. *See Funk,* 148 Wis. 2d at 62–63. In both cases, we held that the statutes of repose limiting the time for an action against persons performing or furnishing the design, planning, supervision of construction or construction of improvements to real property (builder's statutes) violated the equal protection clauses of the United States and Wisconsin constitutions. *See* Wis. Stat. §§ 893.155 (1965);[11] 893.89 (1985–86).[12] Because we employed substantially the same reasoning in both cases to con-

---

[11] Wisconsin Stat. § 893.155 (1965) provided:

clude that the builder's statutes violated the equal protection clauses, *see Funk*, 148 Wis. 2d at 64, we examine the more in-depth reasoning of *Funk* alone to address the Tomczaks' analogy.

¶ 44. The principal reason for holding that the builder's statutes violated the equal protection clauses was that "owners or occupants of land are. . .in the non-protected class." *Id.* at 66–67. In other words, the

**893.155 Within 6 years.** No action to recover damages for any injury to property, or for an injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property, more than 6 years after the performance or furnishing of such services and construction. This limitation shall not apply to any person in actual possession and control as owner, tenant or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury for which it is proposed to bring an action.

[12] Wisconsin Stat. § 893.89 (1985–86) provided:

**893.89 Action for injury resulting from improvements to real property.** No action to recover damages for any injury to property, or for an injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, land surveying, planning, supervision of construction, materials or construction of such improvement to real property, more than 6 years after the substantial completion of construction. If the injury or defect occurs or is discovered more than 5 years but less than 6 years after the substantial completion of construction, the time for bringing the action shall be extended 6 months.

See *Funk v. Wollin Silo & Equipment, Inc.*, 148 Wis. 2d 59, 66–67, 435 N.W.2d 244 (1989) for a discussion of the differences between the two statutes.

builder's statutes terminated liability of those involved in the planning, design and construction of improvements to real estate (the "protected class") after six years, but did not terminate liability of those who would subsequently own or occupy the property (the "unprotected class"). The Tomczaks raise essentially the same argument in this case: Wis. Stat. § 893.37 violates the equal protection clauses because it arbitrarily cuts off the surveyor's liability after six years, but perpetuates the liability of the landowner after six years and beyond.

¶ 45. The *Funk* court went on to examine, and subsequently reject, the justifications put forth by the legislature in adopting Wis. Stat. § 893.89 (1985–86). Specifically, the legislature found that subsequent to the completion of construction, persons involved in the planning, design and construction of improvements to real estate lack control over the property, and other intervening causes which might lead to deterioration of the improvements. *See Funk*, 148 Wis. 2d at 65. Furthermore, the legislature cited the public interest in limiting long-term liability in tort litigation relating to building construction. *See id.*

¶ 46. The *Funk* court rejected these justifications because control was irrelevant to the statute's purpose in avoiding long-term liability. First, the court noted that "[l]iability is not terminated when it is shifted to another class whose ability to compensate for injuries is questionable." *Funk*, 148 Wis. 2d at 74. More importantly, the court concluded that "builders in no event would be liable for injuries resulting from negligent maintenance of those in control of the building." *Id.* Therefore, the *Funk* court found that landowner "control" did not provide a rational basis for the differential treatment afforded to landowners.

¶ 47.   As it relates to surveyors, however, we are satisfied that the legislature's interest in eliminating long-term liability is a rational basis for the disparity in surveyor/landowner treatment.[13] Therefore, we decline to follow the reasoning of the *Funk* court in this case.

¶ 48.   In adopting Wis. Stat. § 893.37, as with any statute of repose, the legislature was faced with the difficult choice of terminating liability—in this case, either the liability of the surveyor or the landowner. The legislature was precluded from terminating the liability of both classes because in that case, a neighboring landowner in the Andersens' position would be completely without redress for the encroachment on their property. Moreover, such a result would alter the well-established guidelines set forth by the adverse possession statutes. *See* Wis. Stat. §§ 893.24–893.32 (1995–96). Instead of the seven-, ten- or twenty-year periods that characterize the current adverse possession statutes, *see id.*, the legislature would have reduced, *sub silentio*, the time required to adversely possess property in this state to the six-year period afforded by § 893.37, without including some of the important prerequisites of successful adverse possession claims. *See, e.g.*, Wis. Stat. § 893.25(2)(a) (1995–96) (requiring actual *continued* occupation of the property).

¶ 49.   Thus, rather than risk an inadvertent change to adverse possession law, the legislature

---

[13] As the dissent aptly points out, the builder's statute in *Funk* specifically included "land surveying" in the "protected class." *See* Dissent at 288. However, the *Funk* court did not consider the rationale of limiting long-term liability as it applies to surveyors. Thus, we are satisfied that *Funk* did not address the issue that is currently before this court.

elected to terminate the surveyor's liability alone. We therefore agree with the *Funk* court that not all long-term liability ends when a statute of repose such as Wis. Stat. § 893.37 is enacted. The landowner may be liable for years after the six-year period of repose expires. With adverse possession as a remedy, however, there is some finality for the landowner's liability.[14] In other words, adverse possession provides inherent protection for the landowner who may be sued for reliance on an erroneous survey.

---

[14] We acknowledge that adverse possession was not an option for the Tomczaks in this case, since the Andersens commenced their lawsuit against the Tomczaks less than 7 years—the minimum time required in Wisconsin for a successful adverse possession claim—after the Tomczaks' initial encroachment on their property.

We also acknowledge that adverse possession will not protect, for various reasons, all landowners who are in the Tomczaks' position. However, it is neither our function, nor our duty as the judiciary to question the wisdom of this legislation. As we have said, "[j]udicial response to a challenged legislative classification requires only that the reviewing court locate some reasonable basis for the classification made. The public policy involved is for the legislature, not the courts, to determine." *Omernik v. State*, 64 Wis. 2d 6, 19, 218 N.W.2d 734 (1974).

Put simply, the legislature's basis for distinguishing between two similarly situated classes need not be *perfect*, but merely *rational*. Yet the dissent deems it newsworthy to remind us that "adverse possession laws do not protect all property owners from long-term liability." Dissent at 288. The dissent forgets our limited purpose in this matter: it is not our duty to ensure that all parties are properly protected from long-term liability, but only to ensure that some rational basis exists for the legislature's decision to treat members of similarly situated classes differently. The legislature has met this burden here.

¶ 50.  On the other hand, without the finality that Wis. Stat. § 893.37 affords, a surveyor's liability would be perpetual. The legislature was no doubt aware that real estate transactions today could rely upon surveys that date to the early 20th century. As a result, there is a distinct possibility that a surveyor could be held liable to a remote and unforseeable purchaser thirty, forty, or even fifty years after completion of the original survey. In our assessment, this legislation is amply justified by the legislature's implicit conclusion that no duty so broad, and no liability so immeasurable should be imposed upon *any* party to a commercial transaction such as that involved here.

¶ 51.  In fact, the problems posed by long-term surveyor liability may be particularly egregious. The technology of land surveying in this country has changed dramatically over the past 50 to 100 years, such that surveys performed today will likely be much more accurate than those performed in the past. As a recent treatise on the subject has noted:

> In less than a single generation, the surveyor has progressed from having to trace and measure each and every foot of a traverse line to measuring long, and heretofore inaccessible, distances with accuracies never before attained, in a matter of minutes, through the use of electronic distance measuring equipment. Presently, equipment is being used that determines positional accuracies of corners in latitude, longitude and elevation to within one inch. Although high costs now prohibit the general use of such equipment, it is forseeable that within a decade or less the practicing land surveyor will employ them in his every day work.

Walter G. Robillard & Lane J. Bouman, *Clark on Surveying and Boundaries* § 31.09, at 1044 (6th ed., Michie Co. 1992).[15]

¶ 52.   The legislature would clearly want to avoid a situation where surveyors are compelled to defend their actions several decades after completion of their original surveys—surveys that were performed according to the accepted standards of the time, but which have recently proven to be inaccurate through the use of modern surveying techniques.

¶ 53.   The Tomczaks contend that any problem of long-term liability is avoided because surveyors generally provide a certification that limits the parties who may rely on the survey's representations. For example, American's survey indicates: "This survey is made for the present owners of the property, and also those who purchase, mortgage or guarantee the title thereof within one (1) year from this date thereof." We disagree with the Tomczaks' argument.

¶ 54.   Regardless of the certification's potential effect on a surveyor's future liability, this "limitation" does little to address the long-term surveyor liability created by a "present" property owner who holds the land in question for many years without selling it. In this scenario, the landowner who has the survey performed may own the property for 30 years before he or she is sued by a neighbor for encroachment. Without a statute of repose such as Wis. Stat. § 893.37, the surveyor would remain liable.

---

[15] For a discussion of current surveying technology and its history, see Walter G. Robillard & Lane J. Bouman, *Clark on Surveying and Boundaries* §§ 31.01–.09 (6th ed., Michie Co. 1992).

■

¶ 55. In light of the important policy concern of statutes of repose and statutes of limitations to ensure prompt litigation of claims and to protect defendants from fraudulent or stale claims brought after memories have faded or evidence has been lost, *see Korkow v. General Casualty Co. of Wisconsin*, 117 Wis. 2d 187, 198–99, 344 N.W.2d 108 (1984) (citation omitted), the legislature reasonably chose to terminate the surveyor's otherwise infinite liability after six years. Where the surveyor could remain vulnerable to erroneous survey liability for undefined periods of time, the landowner's obligation to neighboring property owners imports the protections of adverse possession to lessen the likelihood of long-term accountability.[16] Therefore, we hold that Wis. Stat. § 893.37 satisfies the equal protection commands of the state and federal constitutions.

¶ 56. In so holding, we also note that the classification imposed by Wis. Stat. § 893.37 satisfies the five criteria set forth in *Dane County v. McManus*, 55 Wis. 2d 413, 423, 198 N.W.2d 667 (1972) (citations omitted). These criteria provide that in order to sustain legislation against an equal protection attack:

> (1) All classification[s] must be based upon substantial distinctions which make one class really different from another.

---

[16] We note that the adverse possession statutes allow for the "tacking" together of periods of possession by adverse possessors in privity with one another. *See, e.g.*, Wis. Stat. §§ 893.25(1), 893.26(1), 893.27(1) (1995–96). Therefore, no single landowner is necessarily required to possess the disputed property for the full time periods set forth in those statutes to maintain a successful adverse possession claim.

(2) The classification adopted must be germane to the purpose of the law.

(3) The classification must not be based upon existing circumstances only. [The following sentence was added to No. 3 by *State ex rel. Risch v. Trustees*: 'It must not be so constituted as to preclude addition to the numbers included within a class.']

(4) To whatever class a law may apply, it must apply equally to each member thereof.

. . .

(5) That the characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation.

*Id.*

¶ 57.   As we have indicated, there is a substantial distinction between surveyors and landowners in that the latter class is afforded the protections of adverse possession to lessen the likelihood of long-term liability. This classification serves Wis. Stat. § 893.37's purpose of eliminating long-term, undefined liability, does not preclude addition to the numbers included within the surveyor class, and applies equally to each member of that class. Finally, the potential for virtually perpetual erroneous survey liability suggests the propriety of, and perhaps the need for, substantially different legislation that eliminates such an undesirable result.

### III.

¶ 58.   Finally, the Tomczaks assert that their claim is timely because American's placement and

273

maintenance of permanent survey stakes, together with its certification of accurate boundaries to purchasers for one year, constitutes a continuing tort. According to the Tomczaks, these two actions entitle outside parties to rely upon the "continuing statement" of the correct boundaries for the one-year period so that the six-year limitation period in Wis. Stat. § 893.37 is tolled until the one-year period set forth in the surveyor's certification has expired. Our resolution of this issue depends solely on the application of law to undisputed facts. Therefore, we are presented with a question of law which we review de novo. *See Town of DePere v. City of DePere*, 184 Wis. 2d 278, 282, 516 N.W.2d 1 (Ct. App. 1994).

¶ 59.   We find this argument to be without merit. The Tomczaks rely upon one case for their assertion that where a continuing tort exists, the limitations period does not commence until the last event in the continuum occurs. *See Tamminen v. Aetna Casualty & Surety Co.*, 109 Wis. 2d 536, 559, 327 N.W.2d 55 (1982). In *Tamminen* we held that:

> [w]here there is a continuum of negligent medical care related to a single condition occasioned by negligence, there is but one cause of action; and if any act of negligence within that continuum falls within the period during which suit may be brought, the plaintiff is not obliged to split his cause of action but may bring suit for the consequences of the entire course of conduct.

*Id.* at 556.

¶ 60.   In this case, we have little trouble concluding that American's placement of survey stakes in the ground following completion of the survey is but a single act. When property is staked, no continuum or

series of events transpires. The mere fact that the monument remains in the ground does not somehow transform that single act into a series of continuing events such that the limitations period can be tolled.

¶ 61. In fact, no series of separate negligent acts are alleged in this case. The Tomczaks appear to acknowledge that American committed only one "act" when it placed surveyor stakes in the ground. Instead, their continuing tort or "continuing misrepresentation" argument depends heavily on the surveyor's certification as to the accuracy of the staked boundaries for one year. As long as the certification period remained in effect, the Tomczaks contend that American continuously misrepresented the boundaries of their property.

¶ 62. Reliance on the certification is dubious because Wis. Stat. § 893.37 is clear and unambiguous in its command that "[n]o action may be brought. . .more than 6 years *after the completion of a survey*." (Emphasis added.) In essence, the Tomczaks ask this court to find that the survey was not completed until the "certification period" expired. Such an interpretation of the surveyor's statute would do an injustice to any plain reading of its language. The survey was completed when Bailey signed and dated it in August 1988. Therefore, the six-year limitation period began to run from that date, rendering the Tomczaks' 1995 filing untimely.

## IV.

¶ 63. Because the court of appeals erred in concluding that the discovery rule applied to the Tomczaks' cause of action, we reverse that decision. We further hold that the Tomczaks have failed to demonstrate beyond a reasonable doubt that Wis. Stat.

§ 893.37 is unconstitutional, and conclude that its six-year limitation period was tolled neither by Bailey's certification in the survey nor by American's placement of survey stakes in the ground.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 64. DONALD W. STEINMETZ, J. (*concurring*). I agree with the majority and with Justice Crooks' discussion of *Estate of Makos v. Wisconsin Masons Health Care Fund*, 211 Wis. 2d 41, 564 N.W.2d 662 (1997). I write separately to respond to part of the Chief Justice's dissenting opinion. The Chief Justice argues that the majority holding "that the judicially-created *Hansen* discovery rule cannot be applied to a statute of repose" is inconsistent with the plurality opinion in *Makos*, 211 Wis. 2d at 564 (Steinmetz, J., plurality opinion). Dissent at 286. I disagree.

¶ 65. In *Makos*, the plurality opinion concluded that, as applied to the facts of that case, the statute of repose in Wis. Stat. § 893.55(1)(b) violated Wis. Const. art. I, § 9 where it "closed the doors of the courtroom" before the plaintiff discovered or could have discovered the alleged negligence of the doctor who misdiagnosed her condition. *See Makos*, 211 Wis. 2d at 49, 54 (Steinmetz, J.). The issue whether the *Hansen* discovery rule applies to statutes of repose was not addressed in *Makos*. In this case, the Tomczaks concede that they discovered their encroachment on the Andersens' property prior to the running of the time limit in Wis. Stat. § 893.37. Thus, unlike in *Makos*, the statute of repose in this case did not bar the Tomczaks' claim before they discovered their injury. As applied to the facts here presented, the statute of repose, therefore, is not

unconstitutional under art. I, § 9. *See* majority op. at 263. In its application of art. I, § 9, the holding in this case is not inconsistent with the plurality opinion in *Makos*.

¶ 66. The Chief Justice confuses the judicially created *Hansen* discovery rule with the application of art. I, § 9. In nature and application, the two concepts are entirely different. In *Hansen v. A.H. Robins, Inc.*, 113 Wis. 2d 550, 335 N.W.2d 578 (1993), this court concluded that where a statute of limitations does not set the time at which a plaintiff's claim "accrues," the court retains the authority to do so. *See id.* at 560. The court then held that "[i]n the interest of justice and fundamental fairness, we adopt the discovery rule for all tort actions other than those already governed by a legislatively created discovery rule." *Id.* (emphasis added). Simply stated, the *Hansen* discovery rule sets the time that a cause of action *accrues* under a statute of limitations, unless the statute already expressly provides the time of accrual. Since by definition a statute of repose cuts off a right of action regardless of the time of *accrual, see Makos*, 211 Wis. 2d at 51 n.8 (quoting Black's Law Dictionary 1411 (6th ed. 1990)), the *Hansen* discovery rule cannot apply to a statute of repose.

¶ 67. Article I, § 9, on the other hand, guarantees that every person shall be afforded a remedy for wrongs committed against his or her "person, property or character." "This court has long held that the 'certain remedy' clause of this provision, while not guaranteeing to litigants the exact remedy they desire, entitles Wisconsin residents 'to their day in court.'" *Makos*, 211 Wis. 2d at 52 (Steinmetz, J.) (quoting *Metzger v. Department of Taxation*, 35 Wis. 2d 119, 129, 150 N.W.2d 431 (1967)). In contrast to the *Hansen* discovery rule, which in effect sets the time at which tort

277

statutes of limitations begin to run,[1] art. I § 9, as applied here and in *Makos*, bars the application of a statute of repose only when that statute has closed the courtroom doors before a plaintiff discovered or could have discovered his or her injury.

¶ 68.  Although application of art. I, § 9 in cases such as *Makos* and this case is driven by determining whether the plaintiff discovered his or her injury before the running of the statute of repose, the practical effect of applying art. I, § 9 is far different from that of the *Hansen* discovery rule. The fundamental distinction in the application of these two legal concepts is simple to illustrate.

¶ 69.  If the court were to apply the *Hansen* discovery rule to the statute of repose in Wis. Stat. § 893.37, *every* plaintiff bringing a claim against a surveyor would have six years from the day he or she discovers his or her injury, rather than from the day the survey was completed, to file an action against the surveyor. As explained by the majority, the court in effect would be rewriting the statute of repose in Wis. Stat. § 893.37 as a statute of limitations and then setting in all cases the day of discovery as the time of accrual. Under the *Hansen* discovery rule, the Tomczaks would not be barred from bringing their claim because they filed their action within six years after they discovered their injury. Since the *Hansen* discovery rule does not apply, however, the Tomczaks' claim is barred by Wis. Stat. § 893.37 because they filed their claim "more than 6 years after the completion of the survey." Wis. Stat. § 893.37.

---

[1] Under the *Hansen* discovery rule, a statute of limitations can never violate art. I, § 9 because the statute will not begin to run until a plaintiff discovers, or with reasonable diligence should have discovered, his or her injury.

¶ 70. In contrast, application of the guarantees in art. I, § 9 to a statute of repose turns on the facts of a particular case and does not affect that statute of repose as applied in other cases. For example, although the statute of repose in Wis. Stat. § 893.55(1) was found unconstitutional as applied to the facts in *Makos*, that statute continues to bar actions commenced outside its five-year time period where the plaintiffs discover their injuries prior to the running of the statute. In this case, the guarantees of art. I, § 9 will not save the Tomczaks' claim because, unlike the plaintiff in *Makos*, they discovered their injury prior to the running of the statute of repose. At the time of discovery, the courtroom doors had not been closed to the Tomczaks. Section 893.37, therefore, did not deny the Tomczaks their day in court.

¶ 71. The holding of the court in this case is not inconsistent with the plurality opinion in *Makos*.

¶ 72. JANINE P. GESKE, J. (*concurring*). I join the majority opinion. I agree with the majority that it need not reach the Article I, sec. 9 issue raised in *Estate of Makos v. Wisconsin Masons Health Care Fund*, 211 Wis. 2d 41, 564 N.W.2d 662 (1997), based on the facts of this case. Majority op. at 264. I write merely to address the comments of Chief Justice Abrahamson's dissent and the response of Justice Crooks' concurrence regarding Article I, Section 9 of the Wisconsin Constitution.

¶ 73. Curiously, both writers address the effect today's majority opinion has on the multiple opinions comprising *Makos*. Their discussion of *Makos* is curious, and academic, because none of the four separate opinions in that case has precedential value.

¶ 74. In a unanimous opinion released less than two weeks after the *Makos* decision, this court said that none of the *Makos* opinions have precedential value. *See Doe v. Archdiocese*, 211 Wis. 2d 312, 334–35 n.11, 565 N.W.2d 94 (1997); *see also, Ives v. Coopertools*, 208 Wis. 2d 55, 559 N.W.2d 571 (1997) (per curiam), "our division on reasoning simply means that the analyses of the two concurrences have no precedential value," citing *State ex rel. Thompson v. Jackson*, 199 Wis. 2d 714, 719, 546 N.W.2d 140 (1996) (per curiam), and *State v. Elam*, 195 Wis. 2d 683, 685, 538 N.W.2d 249 (1995) (per curiam), "a majority of the participating judges must have agreed on a particular point for it to be considered the opinion of the court."

¶ 75. The Art. I, sec. 9 portion of the dissent is academic because it contends that the majority opinion overrules the mandate in *Makos*, sub silentio. Overruling the *mandate* of *Makos* is not possible. "A judicial decision is said to be overruled when a later decision, rendered by the same court or by a superior court in the same system, expresses a judgment upon the same question of law directly opposite to that which was before given, thereby depriving the earlier opinion of all authority as a precedent." Black's Law Dictionary 1105 (6th Ed. 1990). Neither the mandate of *Makos*, which reversed the court of appeals and remanded for trial, nor the multiple non-majority opinions by the justices participating in that case can be "overruled" because they never possessed authority as precedent.

¶ 76. The reasoning of Justice Crooks' concurrence is likewise academic when it criticizes the majority's statement about the discovery rule as "contrary to the lead opinion and a concurring opinion in *Makos*." A majority opinion is not bound to comply with non-precedential opinions. Justice Crooks is free to

advocate adoption of the rationale he alone proposed in his *Makos* concurrence, as Chief Justice Abrahamson is free to advocate the position she joined in the *Makos* dissent, but the majority should not be faulted for failing to adopt that rationale when the facts do not even raise Art. I, sec. 9 as an issue.

¶ 77.  N. PATRICK CROOKS, J. (*concurring*). Although I concur with the mandate, I write separately to address the majority's discussion of the discovery rule adopted by this court in *Hansen v. A. H. Robins, Inc.*, 113 Wis. 2d 550, 560, 335 N.W.2d 578 (1983). While I recognize that the *Hansen* discovery rule is relevant to the issue presented, I conclude that the extensive analysis by the majority is unnecessary, since the majority acknowledges that "the Tomczaks learned of their 'injury' well before the period of repose expires." Majority op. at 264 n.10. The majority also fails to recognize and consider the lead opinion and a concurring opinion in *Estate of Makos v. Wisconsin Masons Health Care Fund*, 211 Wis. 2d 41, 564 N.W.2d 662 (1997).

¶ 78.  Writing separately in *Makos*, I concluded that the statute of repose as applied in that case violated Article I, Section 9 of the Wisconsin Constitution. Specifically, I concluded that the statute of repose at issue deprived that plaintiff of "the right to a remedy in violation of Article I, Section 9 of the Wisconsin Constitution," *id.* at 60, because the plaintiff "could not have discovered the injury until after the statute of repose had run." *Id.* at 59. In reaching that conclusion, I urged that:

> courts should consider the following three principles, along with the nature of the cause of action, in

determining whether an individual has been denied the right to a remedy in violation of art. I, § 9 through the legislature's modification, reduction, or elimination of a right to bring a cause of action: (1) whether the legislature modified, reduced, or eliminated a post-constitutional cause of action created by the legislature itself; (2) whether the legislature modified, reduced, or eliminated a common law or pre-constitutional statutory cause of action and provided a reasonable alternative; and (3) whether, if the legislature did not provide a reasonable alternative, it has established that an overpowering public necessity for the abolishment of such right exists, and that no reasonable alternative exists.

*Id.* at 67. Applying this test to the facts in *Makos*, I concluded that there are circumstances under which the legislature cannot eliminate a plaintiff's right to bring a cause of action pursuant to a statute of repose without violating Wis. Const. art. I, § 9.

¶ 79.   The *Hansen* discovery rule and Wis. Const. art I, § 9 are not equivalent legal theories, but are both related to the right to bring a claim. In tort actions where the legislature has not expressly created a discovery rule, the *Hansen* discovery rule sets forth the date that a plaintiff discovers, or should have discovered, his/her injury as the date of the accrual of a claim. Article I, Section 9 of the Wisconsin Constitution provides "[e]very person is entitled to a certain remedy. . .for all injuries, or wrongs which he may receive in his person, property or character." The theories are distinct; however, the *Hansen* discovery rule, and Wis. Const. art I, § 9 in the context of a statute of repose, both address the plaintiff's discovery of his/her injury and ultimately may provide a plaintiff with the right to bring a claim.

¶ 80.   The majority's statement that the *Hansen* discovery rule cannot be applied to a statute of repose fails to recognize that under the Wisconsin Constitution a statute of repose may not bar a claim where the plaintiff had no opportunity to discover the injury. As a practical matter, a Wis. Const. art I, § 9 argument may necessarily be raised in an instance where a plaintiff's cause of action is barred by the expiration of statute of repose because the plaintiff had no opportunity to discover his/her injury. At least two Justices of this court concluded that Wis. Const. art I, § 9 provides a remedy in such an instance. *See Makos*, 211 Wis. 2d at 44 (Steinmetz, J.), 211 Wis. 2d at 60 (Crooks, J., concurring).

¶ 81.   I also write separately to address Justice Geske's concurrence, which states that *Makos* has no precedential value. I disagree. I recognize that this court has previously stated that "a majority [of judges] must have agreed on a particular point for it to be considered the opinion of the court." *State v. Dowe*, 120 Wis. 2d 192, 194, 352 N.W.2d 660 (1984). However, I submit that the appropriate rationale for interpreting a plurality opinion is that adopted by the United States Supreme Court in *Marks v. United States*, 430 U.S. 188, 193 (1977).

¶ 82.   In *Marks*, the United States Supreme Court reviewed a decision of the Sixth Circuit Court of Appeals. The Sixth Circuit had determined that a relevant United States Supreme Court case "never became the law" because the standard set forth in that case "never commanded the assent of any more than three Justices at any one time." *Id.* at 192. The Supreme Court rejected the Sixth Circuit's reasoning:

When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of [a majority of] Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds. . . .' *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 [ ] (1976) (opinion of Stewart, Powell, and Stevens, JJ.).

*Id.* at 193. Since its holding in *Marks*, the United States Supreme Court has re-affirmed the principle of law that the narrowest grounds of a plurality opinion constitute the opinion of the Court. *See, e.g., City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 764 n.9 (1988) (rejecting the argument that a plurality opinion is "not good law" and restating the holding of *Marks*).

¶ 83. The lead and concurring opinions in *Makos* concededly encompassed distinct rationales, making a determination of the "narrowest grounds" arguably complex. However, this does not negate the fact that *Makos* is of precedential value. In *Nichols v. United States*, 511 U.S. 738, 745 (1994), the Supreme Court again revisited the "narrowest grounds" holding of *Marks* and applied it to the Court's fragmented decision in *Baldasar v. Illinois*, 446 U.S. 222 (1980). The Supreme Court recognized that several lower courts had "decided that there is no lowest common denominator or 'narrowest grounds' that represents the Court's holding [in *Baldasar*]." *Nichols*, 511 U.S. at 745. Still other courts had reached differing conclusions regarding which Justice's opinion in *Baldasar* set forth the opinion of the Court. *See Nichols*, 511 U.S. at 745. Rather than ignore *Baldasar* by concluding it has no precedential value, the Supreme Court restated its holding in *Marks* and concluded that a confusing plu-

rality opinion should be reexamined and clarified by the Court, not disregarded. *See Nichols*, 511 U.S. at 746.

¶ 84.  Because the plurality opinion in *Makos* is unnecessary to the majority opinion given the facts in the present case, I decline to examine *Makos* beyond reasserting the discussion of Wis. Const. art I, § 9 and advocating for the application of the three-part test discussed above. I do, however, urge this court to recognize that a plurality opinion of this court is in no way devoid of any precedential value. *Cf. Marks* 430 U.S. at 193; *Nichols*, 511 U.S. at 745–46.

¶ 85.  In sum, I conclude that the lengthy discussion of the *Hansen* discovery rule is unnecessary given the facts presented in this case. Moreover, I strongly disagree with the majority's holding that the "*Hansen* discovery rule cannot be applied to a statute of repose" due to the majority's failure to address Wis. Const. art I, § 9. I also urge this court to consider in future cases, where applicable, the adoption of the three-part test suggested in *Makos*, 211 Wis. 2d at 67. Finally, I assert that the opinion of this court in *Makos* is of precedential value, and that its legal authority should be determined in accord with the United States Supreme Court's decision in *Marks*.

¶ 86.  For the reasons set forth, I concur.

¶ 87.  SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (dissenting). I write because the majority opinion's discussion of the *Hansen* discovery rule is internally inconsistent and the holding is irreconcilable with the court's prior cases relating to the application of the discovery rule, statutes of repose and Wis. Const. art. I, § 9, which provides that "every per-

son is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive." Furthermore, I conclude that Wis. Stat. § 893.37 violates the equal protection clauses of the Wisconsin and federal Constitutions.

## I

¶ 88. The majority opinion states that in adopting a statute of repose "the legislature may. . .choose to employ no discovery rule at all." Majority op. at 258. It further states its holding as follows: "We hold that the judicially-created *Hansen* discovery rule cannot be applied to a statute of repose." Majority op. at 260. I conclude that the majority opinion *sub silentio* overrules the mandate in *Estate of Makos v. Wisconsin Masons Health Care Fund*, 211 Wis. 2d 41, 564 N.W.2d 662 (1997).

¶ 89. Contrary to the majority opinion's position, the holding in this case is, in my opinion, inconsistent with Justice Steinmetz's lead opinion and Justice Crooks's concurrence in *Makos*. These justices concluded that the statute of repose, which did not take into account the date of discovery of the injury, violates art. I, § 9. *See Makos*, 211 Wis. 2d at 44 (Steinmetz, J.), 211 Wis. 2d at 60 (Crooks, J., concurring).

¶ 90. The holding in this case is, in my opinion, consistent with Justice Bradley's dissent in *Makos*, which I joined. The dissent in *Makos* upheld the legislature's power to enact a statute of repose without regard to the date of discovery of the injury.

¶ 91. The legal and factual scenarios in *Makos* and this case are virtually identical.

¶ 92. *Makos* involved Wis. Stat. § 893.55(1)(b), a statute of repose requiring medical malpractice actions to be commenced within one year from the date the

injury was discovered but not later than five years from the date of the act or omission. In this case the statute of repose provides that no action for negligence, errors or omission in the making of any survey may be brought against an engineer or a land surveyor more than six years after completion of the survey.

¶ 93.  In *Makos* the plaintiff filed a medical malpractice action against her physician after the statute of repose had run. In this case the plaintiffs filed a negligence action against their land surveyor after the statute of repose had run.

¶ 94.  Despite the nearly identical factual and legal scenarios, the end results of the two cases are significantly different. In *Makos* this court remanded the cause for trial, thereby allowing the plaintiff to pursue the medical malpractice action. In this case the court bars the plaintiffs' negligence action as untimely, thereby closing the courtroom doors to the plaintiffs without giving them a day in court.

¶ 95.  In my view had the majority's reasoning in this case been applied to *Makos*, the estate of Makos should have been barred, by a 4–2 vote, from pursuing the medical malpractice action. The majority opinion should acknowledge that it is adopting the dissenting position in *Makos* regarding the discovery rule, statutes of repose and art. I, § 9.

## II

¶ 96.  I also conclude that Wis. Stat. § 893.37 violates the equal protection clauses of the Wisconsin and federal Constitutions.

¶ 97.  The issue presented is whether the classification in Wis. Stat. § 893.37 is reasonably related to a legitimate state purpose. If there is no reasonable relationship between the legislative classification and the

legislative purpose, then § 893.37 violates the equal protection clauses of the Wisconsin and federal Constitutions.

¶ 98. What is the rational basis for the distinction between land surveyors and property owners? The majority opinion attempts to salvage Wis. Stat. § 893.37 from an equal protection challenge by stating that "there is a substantial distinction between surveyors and landowners in that the latter class is afforded the protections of adverse possession to lessen the likelihood of long-term liability." Majority op. at 273.

¶ 99. The fundamental flaw in the majority opinion's analysis is that the adverse possession laws do not protect all property owners from long-term liability. Under Wisconsin law there are several prerequisites for adverse possession, and a landowner may not be able to meet them. In this case the Tomczaks are liable to the abutting property owners but cannot seek contribution or indemnification from the land surveyor who caused the damage.

¶ 100. Furthermore, the majority opinion contravenes *Funk v. Wollin Silo & Equipment, Inc.*, 148 Wis. 2d 59, 435 N.W.2d 244 (1989), in which this court struck down a statute of repose that distinguished property owners, occupants, and tenants from builders, material suppliers, and land surveyors. The statute of repose immunized the latter group from liability upon negligence actions not brought within six years after substantial completion of construction. This court held that the statute violates equal protection and specifically rejected the legislature's justification for the statute—that owners, occupants, and tenants have post-construction control over the premises while builders, material suppliers, and land surveyors do not. *See id.* at 77, 74.

¶ 101.　I see no basis for distinguishing the statute of repose in *Funk* from the statute at issue here.

¶ 102.　For the foregoing reasons, I dissent.

¶ 103.　I am authorized to state that Justice Ann Walsh Bradley joins this dissent.